# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

vs.

LAMONT WILLIAM PAPAKEE,

          Defendant.

No. CR06-0162

**REPORT AND RECOMMENDATION**

_____

This matter comes before the court pursuant to the defendant's February 22, 2007, motion to suppress evidence and request for an evidentiary hearing (docket number 29). The government resisted the motion on March 1, 2007. This matter was referred to the undersigned United States Magistrate Judge for the issuance of a report and recommendation. It is recommended that the motion to suppress be denied.

The motion challenges a search warrant issued for the defendant's residence on September 8, 2006. Specifically, the defendant contends that the warrant is not supported by probable cause and omitted a material fact concerning the location of the alleged sexual assault. The defendant requests an evidentiary hearing pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).

The government contends that the warrant is supported by probable cause. It contends that if probable cause is somehow lacking, the evidence should not be suppressed because it meets the good faith exception found in <u>United States v. Leon</u>, 468 U.S. 897 (1984). Finally, the government contends that the defendant is not entitled to a <u>Franks v. Delaware</u> hearing.

## The Search Warrant

On September 8, 2006, Bryan Ellenbecker of the Tama County Sheriff's Office appeared with Mesquaki Tribal Police Officer Dwight Spotted Tail and Federal Bureau of Investigation Special Agent Jason Amoriell before State of Iowa Magistrate Chad Frese. Magistrate Frese was presented with the following information from Tribal Officer Dwight Spotted Tail:

> I'm a certified peace officer for the State of Iowa. I'm currently employed as a Deputy with the Tama County Sheriff's Office. I have a Bachelor's Degree from Buena Vista College, I completed the Iowa Law Enforcement Academy in the 144th Basic. I have been in law enforcement for 12 years as a full-time office and 6 years of Reserve and Part-time experience. I have attended numerous trainings on Sex Abuse, Drug Classes, and all aspects of law enforcement. On 09-08-06, I received information from Chief Deputy Dave Ruopp of a possible sexual assault case that had happened at 315 Red Earth Drive, Tama, Iowa in Tama County. Information was given to the Tama County Sheriff's Office by Officer Dwight Spotted Tail with the Meskawki Tribal Police. (See attached Case Investigation Report).

Deputy Ellenbecker swore to the truth of the following statements:

> I was approached by Denise Davenport who is an employee of the tribe and told that she had been made aware of a woman who was the victim of a sexual assault that had occurred on or about Wednesday night, 6 September.

> I inquired further and was told that the victim, Ms. Lucie Dale, had been to a party at the home of Mr. LaMont Papakee. Denise Davenport had been told of the incident by Rita Papakee who allegedly had gone to the party and witnessed the victim nude and passed out on the floor of the residence. Rita told Denise that the victim had been doused with beer and had her clothing removed presumably by participants at the party. She then left.

> Rita supposedly went back a second time and observed the victim was bloody with lacerations and bruises about her body. Rita was aparently able to get the victim up and take her to the

home of Rodney Papakee where she gave her clothing and assistance.

The next day Rita contacted a friend who is a nurse and asked her to come to the house and examine the victim. The victim refused any medical treatment and refused to report the incident to the police. Rita also allegedly told Denise that she had seen multiple lacerations and bruised on the victims body including cigarette burns on her pubic area and her buttocks. Rita told Denise that the victim had been sexually assaulted with a beer bottle and a cucumber and was bleeding from her rectum and vagina.

I made contact with Rita Papakee and spoke with her about the incident. She confirmed the heresay information Denise had given me. She also gave me the names of several of the participants who were present at the party when she was there. I asked rita if they had called the Tama County Sheriff and she said they had. She said a deputy came out and the victim told him that she was alright and didn't want to make a report, the deputy apparently left without making a report.

I then made contact with the victim who was at the residence of Rodney Papakee. I observed bruises and abrasions on her head and she said she was having "real bad pains in my head". I tried to get her to tell me what had happened but she was very reluctant and kept saying she did not want to report anything but just wanted to go home. I continued to talk to her and attempt to establish a rapport and she did tell me she had been hit in the head with vodka bottle by Connie Blackcloud and was also beaten by LaMont. I tried to get her to go for an examination and she refused. I was able to convince her to come to the police station and take some pictures of her injuries. I was able to obtain photographs showing injuries to her head, arms, buttocks and legs. The injury I observed on her buttocks resembled that of a cigarette burn. She told me she had similar burn marks other pubic area but did not want me to photograph them. Prior tooling to the station I took her to LaMont's house at her request to attempt to get her clothes. On the way out the door she said he was washing the blody pillows and was attempting to get rid of the evidence.

All three law enforcement officers were placed under oath by Magistrate Frese. He asked each officer detailed questions concerning what they had observed and been told by the alleged victim and others. See Exhibit 2 attached to the Government's resistance. Based on this information, Magistrate Frese issued the requested search warrant.

The defendant alleges and the government concedes that Deputy Ellenbecker had previously presented a search warrant to a Magistrate Kuhter who refused to sign the warrant. The government contends that Magistrate Kuhter is not a lawyer and that she refused to sign it upon the erroneous belief that a warrant cannot be issued upon hearsay. The government further alleges that the record made before Magistrate Frese is considerably more detailed than the request presented to Magistrate Kuhter. These, however, are fact issues. Because the parties agree that a warrant was earlier presented to Magistrate Kuhter, this is the only fact concerning the earlier application that the court takes as true for the purpose of resolving this motion.

The defendant further contends that the warrant lacks probable cause because the allegations of wrongdoing are not sufficiently corroborated and the reliability of those providing information is not established. Finally, the defendant states that the officers misled Magistrate Frese because they omitted facts specific to the location or occurrence of the alleged assault by the defendant.

## CONCLUSIONS OF LAW

Because the evidence sought to be suppressed was gathered pursuant to a search warrant, the court employs the standard set forth in Illinois v. Gates, 462 U.S. 213 (1983), to determine the existence of probable cause. It is well established that a warrant affidavit must show particular facts and circumstances in support of the existence of probable cause sufficient to allow the issuing judicial officer to make an independent evaluation of the application for a search warrant. The duty of the judicial officer issuing a search warrant is to make a "practical, commonsense decision" whether a reasonable person would have reason to suspect that evidence would be discovered, based on the totality of the circumstances. United States v. Peterson, 867 F.2d 1110, 1113 (8th Cir. 1989).

Sufficient information must be presented to the issuing judge to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusion of others. Gates, 462 U.S. at 239. However, it is clear that only the probability, and not a prima facie showing, of criminal activity is required to establish probable cause. Id. at 235.

This court does not review the sufficiency of an affidavit de novo. An issuing judge's determination of probable cause should be paid great deference by reviewing courts. Id. at 236. The duty of the reviewing court is simply to ensure that the issuing judge had a substantial basis for concluding that probable cause existed. Id. at 238-39.

Even where probable cause is lacking, the court's inquiry does not end. Pursuant to United States v. Leon, 468 U.S. 897 (1984), in the absence of an allegation that the issuing judge abandoned a neutral and detached role, suppression is appropriate only if the affiant was dishonest or reckless in preparing the affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause. In Leon, the United States Supreme Court noted the strong preference for search warrants and stated that in a doubtful or marginal case a search under a warrant may be sustainable where without one, it would fall. Leon, 468 U.S. at 914.

> Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, . . . for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search. . . . Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, . . . and it is clear in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued.

Id. at 922-23.

Pursuant to Leon, suppression remains an appropriate remedy: (1) where the magistrate issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth,

Franks v. Delaware, 438 U.S. 154 (1978); (2) where the issuing magistrate wholly abandons the judicial role and becomes a "rubber stamp" for the government; (3) where the officer relies on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) where the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid. In Leon, the remedy of suppression was not ordered despite the fact that the affidavit in that case did not establish probable cause to search the residence in question. Further, the information was fatally stale and failed to properly establish the informant's credibility. The standard announced in Leon is an objective standard.

In this case, the affidavit of Bryan Ellenbecker supported the search warrant. In it, Deputy Ellenbecker reported the statements of Rita Papakee. Ms. Papakee was a complaining witness who observed the alleged victim at the defendant's residence naked after being doused with beer. She then left. When she came back after the alleged assault, Ms. Papakee observed signs of harm to the alleged victim that were consistent with a serious assault. Ms. Papakee assisted the victim and later got a nurse to give her attention. Ms. Papakee was able to name participants at the residence at the time of the alleged assault. She called the police.

Deputy Ellenbecker's affidavit also shows that he talked to the alleged victim in this case. He personally observed signs that were consistent with a serious assault. The alleged victim identified the defendants in this case as the perpetrators of the assault. The victim also consistently stated that she did not want to make a report or get the police involved. Finally, she told Deputy Ellenbecker that she was attempting to get rid of the evidence by washing certain blood stained items.

The information in the affidavit was supplemented by the detailed examination made by Magistrate Frese while the three investigating law enforcement officers were under oath. The information supporting the warrant was recent, detailed, and corroborated. The affiant made no attempt to conceal or diminish the fact that the alleged victim was

unwilling to press charges. The totality of the circumstances demonstrates that there was probable cause to issue the warrant.

### Franks v. Delaware

In order to prevail on a challenge to a warrant affidavit pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), the challenger must show (1) that a false statement knowingly and intentionally or with reckless disregard for the truth, was included in the affidavit and (2) that the affidavit's remaining content is insufficient to establish probable cause. <u>United States v. Gladney</u>, 48 F.3d 309, 313 (8th Cir. 1995).

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

<u>Franks</u>, 438 U.S. at 171.

Further, in order to mandate a hearing, the challenged statements in the affidavit must be necessary to a finding of probable cause. <u>United States v. Flagg</u>, 919 F.2d 499 (8th Cir. 1990); <u>see also</u> <u>United States v. Streeter</u>, 907 F.2d 781, 788 (8th Cir. 1990) (contested material must be "vital" to probable cause). It must also be remembered that although the affidavit must contain statements that are truthful,

> [t]his does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct. For probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that some times must be garnered hastily. But surely it is to be

> "truthful" in the sense that the information put forth is believed
> or appropriately accepted by the affiant as true.

Franks, 438 U.S. at 165.

Omissions of facts are not misrepresentations unless they cast doubt on the existence of probable cause. United States v. Parker, 836 F.2d 1080, 1083 (8th Cir. 1987). The same analytical process used to determine whether an affidavit contains a material falsehood is used to determine whether an omission will vitiate a warrant affidavit under Franks. United States v. Lueth, 807 F.2d 719, 726 (8th Cir. 1986). The defendant must show that: (1) the police omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading; and (2) that the affidavit, if supplemented by the omitted information, would not have been sufficient to support a finding of probable cause. With respect to the second element, suppression is warranted only if the affidavit as supplemented by the omitted material could not have supported the existence of probable cause. Lueth, 807 F.2d at 726.

The defendant contends that the affiant omitted information concerning the location of the assault. However, the affidavit specifically states that it occurred at a party at the home of LaMont Papakee. Officer Dwight Spotted Tail specifically described the residence of LaMont Papakee as 315 Red Earth Drive. The warrant issued to search the residence at 315 Red Earth Drive, Tama, Iowa.

Accordingly, the court is unable to find an omission from an examination of the defendant's motion. Furthermore, the defendant does not suggest any evidence that, if added to the affidavit, would detract from a finding of probable cause. Under these circumstances, the defendant is not entitled to an evidentiary hearing.

### Good Faith

In the event that the court were to find that probable cause was somehow lacking, the government is obviously entitled to the good faith exception of United States v. Leon, 468 U.S. 897 (1984). In addition to the detailed affidavit and investigation report, Magistrate Frese wisely placed three law enforcement officers under oath and asked

additional questions concerning the warrant. Under these circumstances, the defendant cannot persuasively argue that Magistrate Frese abandoned his neutral and detached role.

<u>Magistrate Shopping</u>

Finally, the defendant appears to contend that there was something wrong with appearing before a second magistrate when a previous magistrate refused to issue the warrant. As the Seventh Circuit Court of Appeals stated in <u>United States v. Pace</u>, 898 F.2d 1218 (7th Cir. 1990):

> The Fourth Amendment on its face does not prohibit from seeking a second magistrate's approval to search when another magistrate denies a search warrant. The Fourth Amendment commands only that a "neutral and detached magistrate" determine that probable cause exists. Thus, the important questions, from a Fourth Amendment standpoint, are whether the magistrate really was "neutral and detached," and whether probable cause actually existed, not how many magistrates the government applied to before finally obtaining a warrant.

<u>Pace</u> at 1230-31.

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[1] to the Report and Recommendation within ten (10) days of the date of the report and recommendation, that the defendant's February 22, 2007, motion to suppress be denied.

March 6, 2007.

JOHN A. JARVEY
Magistrate Judge
**UNITED STATES DISTRICT COURT**

---

[1]Any party who objects to this report and recommendation must serve and file specific, written objections within ten (10) court days from this date. A party objecting to the report and recommendation must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections.