# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LAMONT WILLIAM PAPAKEE<br><br>Defendant. | No. 06-CR-162-1-LRR<br><br>**ORDER** |

*TABLE OF CONTENTS*

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.  FACTUAL FINDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.   *The Players* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.   *Search Warrant Application* . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.   ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.   *Probable Cause* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.   **Franks** *Hearing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    C.   *Good Faith* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    D.   *New Argument* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## I. INTRODUCTION

The matters before the court are the government's Request for Clarification ("Request") (docket no. 48) and Defendant LaMont William Papakee's Objections (docket no. 52) to the United States magistrate judge's Report and Recommendation (docket no. 33). The United States magistrate judge recommends that the court deny Defendant's Motion to Suppress and Request for Hearing ("Motion") (docket no. 29).

## II. PROCEDURAL BACKGROUND

Defendant is charged in a two-count Superseding Indictment with his co-defendant, Connie Frances Blackcloud.[1] Count 1 charges Defendant with Aggravated Sexual Abuse in Indian Country, in violation of 18 U.S.C. §§ 2, 1151, 1153 and 2241(a)(1). Count 2 charges Defendant with Sexual Abuse in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153 and 2242(2).

On February 22, 2007, Defendant filed the Motion. On March 1, 2007, the government filed a Resistance. On March 6, 2007, the United States magistrate judge issued the Report and Recommendation.

On March 13, 2007, the government filed the Request. On March 15, 2007, Defendant filed the Objections.

## III. STANDARD OF REVIEW

The undersigned is required to "make a de novo determination of those portions of [the Report and Recommendation] to which objection is made." 28 U.S.C. § 636(b)(1); *see, e.g., United States v. Uscanga-Ramirez*, 475 F.3d 1024, 1027 (8th Cir. 2007) (stating that de novo review is "required"). The undersigned "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28

---

[1] On December 7, 2006, Defendant and Blackcloud were charged in a one-count Indictment with Sexual Abuse in Indian Country, in violation of 18 U.S.C. §§ 2, 1151, 1153 and 2242(2). On March 7, 2007, the Superseding Indictment was filed.

2

U.S.C. § 636(b)(1). The undersigned "may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

## IV. FACTUAL FINDINGS

In the Request, the government alleges that there are several inadvertent misstatements of fact in the Report and Recommendation and asks the court to clarify them. Defendant does not object to any of the United States magistrate judge's factual findings.

The court agrees that the Report and Recommendation transposes the names of the law enforcement officers involved in the procurement of the search warrant at issue. Accordingly, the court shall grant the Request.

For the sake of clarity, the court sets aside all of the factual findings in the Report and Recommendation and makes the following factual findings:

### A. The Players

Bryan Ellenbecker is a Deputy with the Tama County Sheriff's Office. Dwight Spotted Tail is a Police Officer with the Meskwaki Nation Police Department. Jason Amoriell is a Special Agent with the Federal Bureau of Investigation. The Honorable Chad Frese is a part-time magistrate judge for the State of Iowa.

### B. Search Warrant Application

On September 8, 2006, Deputy Ellenbecker applied to Magistrate Frese for a search warrant, pursuant to Iowa Code chapter 808 (2005).[2] *See* Gov't Ex. 1 (docket no. 32-1)

---

[2] Iowa Code section 808.3 provides:

> A person may make application for the issuance of a search warrant by submitting before a magistrate a written application, supported by the person's oath or affirmation, which includes facts, information, and circumstances tending to establish sufficient grounds for granting the application, and probable cause for believing that the grounds exist. . . . The

(continued…)

3

at 1. Deputy Ellenbecker brought Officer Spotted Tail and Special Agent Amoriell to Magistrate Frese.

In his written search warrant application ("Application"), Deputy Ellenbecker sought authorization to search a "[b]lue 2-[s]tory house with an address of 315 Red Earth Drive, Tama, Iowa" and any vehicles at that address for "[a] bloody pillow, bloody clothing . . . , broken glass, [a] cucumber, all used cigarette butts, all beer bottles and cans . . . . [and] any items that have blood, blood stain or [are] related to a sexual assault." *Id.* The application also sought authorization to search the persons of Defendant and Blackcloud.

In the Application, Deputy Ellenbecker swore:

> I'm a certified peace officer for the State of Iowa. I'm currently employed [sic] as a Deputy with the Tama County Sheriff's Office. I have a Bachelor's Degree from Buena Vista College, I completed the Iowa Law Enforcement Academy in the 144th Basic. I have been in law enforcement for 12 years as a full-time office [sic] and 6 years of Reserve and Part-time experience. I have attended numerous trainings on Sex Abuse, Drug Classes, and all aspects of law enforcement. On 09-08-06, I received information from Chief Deputy Dave Ruopp of a possible sexual assault case that had happened at 315 Red Earth Drive, Tama, Iowa in Tama County. Information was given to the Tama County Sheriff's Office by Officer Dwight Spotted Tail with the Meskawki Tribal Police. (See attached Case Investigation Report).

*Id.* at 5.

---

[2](…continued)
> magistrate may . . . require that a witness upon whom the applicant relies for information appear personally and be examined concerning the information.

Iowa Code § 808.3.

4

Case 1:06-cr-00162-LRR   Document 66   Filed 03/21/07   Page 4 of 14

Deputy Ellenbecker attached a Case Investigation Report ("Report") to the search warrant application. Officer Spotted Tail prepared the Report, in which he stated:

> I was approached by Denise Davenport who is an employee of the tribe and told that she had been made aware of a woman who was the victim of a sexual assault that had occurred on or about Wednesday night, 6 September.
>
> I inquired further and was told that the victim, Ms. Lucie Dale, had been to a party at the home of Mr. LaMont Papakee. Denise Davenport had been told of the incident by Rita Papakee who allegedly had gone to the party and witnessed the victim nude and passed out on the floor of the residence. Rita told Denise that the victim had been doused with beer and had her clothing removed presumedly by participants at the party. She then left.
>
> Rita supposedly went back a second time and observed the victim was bloody with lacerations and bruises about her body. Rita was aparently [sic] able to get the victim up and take her to the home of Rodney Papakee where she gave her clothing and assistance.
>
> The next day Rita contacted a friend who is a nurse and asked her to come to the house and examine the victim. The victim refused any medical treatment and refused to report the incident to the police. Rita also allegedly told Denise that she had seen multiple lacerations and bruised [sic] on the victims [sic] body including cigarette burns on her pubic area and her buttocks. Rita told Denise that the victim had been sexually assaulted with a beer bottle and a cucumber and was bleeding from her rectum and vagina.
>
> I made contact with Rita Papakee and spoke with her about the incident. She confirmed the heresay [sic] information Denise had given me. She also gave me the names of several of the participants who were present at the party when she was there. I asked [R]ita if they had called the Tama County Sheriff and she said they had. She said a deputy came out and the victim

> told him that she was alright and didn't want to make a report, the deputy apparently left without making a report.
>
> I then made contact with the victim who was at the residence of Rodney Papakee. I observed bruises and abrasions on her head and she said she was having "real bad pains in my head." I tried to get her to tell me what had happened but she was very reluctant and kept saying she did not want to report anything but just wanted to go home. I continued to talk to her and attempt [sic] to establish a rapport and she did tell me she had been hit in the head with vodka bottle by Connie Blackcloud and was also beaten by LaMont. I tried to get her to go for an examination and she refused. I was able to convince her to come to the police station and take some pictures of her injuries. I was able to obtain photographs showing injuries to her head, arms, buttocks and legs. The injury I observed on her buttocks resembled that of a cigarette burn. She told me she had similar burn marks on her pubic area but did not want me to photograph them. Prior to coming to the station I took her to LaMont's house at her request to attempt to get her clothes. On the way out the door she said he was washing the blody [sic] pillows and was attempting to get rid of the evidence.

*Id.* at 4.

Magistrate Frese reviewed the Application, including the Report, and placed all three law enforcement officers under oath. He then questioned Officer Spotted Tail and Special Agent Amoriell.

Officer Spotted Tail confirmed the truth of much of the information in the Report. He verified that he personally interviewed Ms. Dale and observed and photographed many of her injuries. Ms. Dale told Officer Spotted Tail that Defendant had beaten her, indicated that she was bleeding from her pubic area and told him that she had burn marks on her pubic area.

Special Agent Amoriell told Magistrate Frese that another FBI Special Agent,

6

Special Agent Brad Murkins, met Ms. Dale at a bus station. Special Agent Murkins saw Ms. Dale and believed she had "swelling and lacerations on her face that were consistent with being hit with a Vodka bottle." Gov't Ex. 2 (docket no. 32-2) at 3.

Magistrate Frese considered the entire Application, including Deputy Ellenbecker's affidavit, as well as the testimony of Officer Spotted Tail and Special Agent Amoriell. Based on all of the evidence, Magistrate Frese found there was "probable cause that a crime had occurred and there's evidence of a crime to be found at the residence of Mr. Papakee." *Id.*; *see also* Gov't Ex. 1 (docket no. 32-1) at 6 (same). He issued the requested warrant.

## V. ANALYSIS

Defendant objects to nearly all of the United States magistrate judge's legal conclusions in the Report and Recommendation. Defendant reasserts his arguments that: (1) the search warrant lacked probable cause; (2) Defendant is entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978); and (3) the government is not entitled to rely on the good faith exception in *United States v. Leon*, 468 U.S. 897 (1984).[3] In a new argument, Defendant asks the court to suppress statements he made to law enforcement at the time of his arrest, because the government violated *Miranda v. Arizona*, 384 U.S. 436 (1966). The court considers each of Defendant's arguments, in turn.

### A. Probable Cause

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." U.S. Const. amend. IV. "Determinations of probable cause must be premised on the totality of the circumstances." *United States v. Williams*, 477 U.S. 554, 557 (8th Cir. 2007). "'The task of the issuing magistrate is

---

[3] Defendant does not object to the United States magistrate judge's conclusion that Deputy Ellenbecker's "magistrate shopping" did not render the search warrant invalid. Because Defendant does not object, the court does not consider this argument. 28 U.S.C. § 636(b)(1).

7

simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

"An issuing judge's probable cause determination is entitled to substantial deference." *United States v. Durham*, 470 F.3d 727, 733 (8th Cir. 2006) (citing *United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996)). "[T]he duty of a reviewing court is simply to ensure the magistrate had a substantial basis for concluding that probable cause existed." *Gates*, 362 U.S. at 238-39 (citations, internal quotation marks and alterations omitted).

Defendant contends the warrant lacked probable cause, because "[i]n advance of presenting the search warrant, Officer [sic] Ellenbecker relied on the hearsay testimony of Dwight Spotted Tail, an officer with the Mesquakee [sic] nation, and not a peace officer. . . . [T]here is no precedent for relying on a non-law enforcement officer without further corroboration." Objections (docket no. 52-1) at 1-2. Defendant also points out that "Dwight Spotted Tail offered no hearsay evidence to the Magistrate that Lamont Papakee assaulted Ms. Dale in his residence, nor did officer [sic] Ellenbecker corroborate independently the fact presented in Officer [sic] Ellenbecker's affidavit." *Id.* at 2.

Considering the totality of the circumstances, the court holds that Magistrate Frese had a substantial basis for concluding that probable cause existed. Probable cause may be established in a variety of ways. "'[P]robable cause may be established by the observations of trained law enforcement officers or by circumstantial evidence.'" *United States v. Terry*, 305 F.3d 818, 822-23 (8th Cir. 2002) (quoting *United States v. Searcy*, 181 F.3d 975, 981 (8th Cir. 1999)). "An informant's tip can be relied on to support a probable cause determination if the informant has provided reliable information in the past or if the tip is independently corroborated." *Durham*, 470 F.3d at 733. "Observations of

8

fellow officers . . . engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." *United States v. Ventresca*, 380 U.S. 102, 111 (1965).

In his affidavit, Deputy Ellenbecker swore that he was a trained and certified law enforcement officer and had received information from Officer Spotted Tail and another deputy in the Tama County Sheriff's Office that a sexual assault had occurred at 315 Red Earth Drive, Tama, Iowa. He then attached Officer Spotted Tail's Report.

In the Report, Officer Spotted Tail detailed the information he received from the primary informant in the case, Ms. Rita Papakee. He reported that Ms. Papakee had observed Ms. Dale at Defendant's residence naked after being doused with beer. Ms. Papakee left the party, and when she returned, she saw bruises, lacerations and burns on Ms. Dale's body, including cigarette burns on her pubic area and her buttocks. Ms. Papakee named some of the party's attendees. Officer Spotted Tail followed up on Ms. Papakee's allegations and talked to Ms. Dale personally. He saw injuries on her head and buttocks that were consistent with Ms. Papakee's information. Ms. Dale identified Defendant and Blackcloud as the perpetrators of the assault. Officer Spotted Tail drove Ms. Dale to Defendant's home to attempt to retrieve her clothes. After stopping by Defendant's home, Defendant told Officer Spotted Tail that Defendant was trying to get rid of evidence by washing bloody pillows.

Although Deputy Ellenbecker's affidavit relied upon hearsay within hearsay, he swore that the underlying informant (implicitly Ms. Papakee) "has previously given reliable information." Gov't Ex. 1 (docket no. 32-1), at 6. To pierce through some of the layers of hearsay and corroborate the underlying information, Deputy Ellenbecker also provided Magistrate Frese the opportunity to examine Officer Spotted Tail and Special Agent Amoriell under oath. Officer Spotted Tail verified the contents of his Report. His personal observations verified the accounts of Ms. Papakee. Special Agent Amoriell

9

provided further corroboration, insofar as he told Magistrate Frese that Special Agent Murkins saw the victim and observed facial injuries consistent with being hit with a vodka bottle.

The court need not decide whether Officer Spotted Tail is a trained and certified "peace officer" who is entitled to investigate crime and apply for and execute search warrants in the State of Iowa.[4] Even if Officer Spotted Tail's testimony were simply the testimony of a concerned citizen, Magistrate Frese was free to credit it without requiring additional indicia of reliability. *See United States v. Dukes*, 432 F.3d 910, 913 (8th Cir. 2006) ("It is well-settled that the personal and recent knowledge of named eyewitnesses is sufficient to establish probable cause."). As one noted writer has observed:

> The lower courts have rather consistently held that the proof-of-veracity rules which obtain in informant cases are not applicable with respect to other sources of information. This result has been reached when the source of the information has been characterized as a "victim" or "eyewitness to the crime," a "citizen eyewitness," "a complaining witness," "a cooperative citizen," a "concerned citizen," "an ordinary citizen," "an average citizen[,]" a "citizen-informant," "an informant not from the criminal milieu," a "citizen-informer," or a "nonprofessional informant".

Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 3.4(a) (4th ed. 2004) (footnotes omitted) (citing, in part, *Cundiff v. United States*, 501 F.2d 188, 190 (8th Cir. 1974)). In other words, even if Officer Spotted Tail is not a law enforcement officer, he is not a classic "informant" but a "cooperative citizen," "concerned citizen"

---

[4] To enforce certain provisions of the Iowa Criminal Code, a law enforcement officer must be a "peace officer" as defined in Iowa Code section 801.4. *See, e.g.*, Iowa Code § 804.6 ("An arrest pursuant to a warrant shall be made only by a peace officer."). It is presently unsettled whether Meskwaki Nation Police Officers are "peace officers." *See* 2006 Op. Iowa Att'y Gen. 6-9-1 (Sieverding to Gronstal, Sept. 19, 2006) (opining that Meskwaki Nation Police Officers are "peace officers" under Iowa Code section 801.4).

or "nonprofessional informant." There is no reason to question Officer Otter Tail's reliability.

Accordingly, the court overrules Defendant's Objections, insofar as he alleges that the warrant was not supported by probable cause.

### B. Franks *Hearing*

Defendant contends that he "is entitled to a *Franks* hearing." Objections at 2. In the Motion, Defendant more specifically argued that Deputy Ellenbecker, Officer Spotted Tail and Special Agent Amoriell "misled the magistrate by way of omission of facts specific to the location or occurrence of assault by the Defendant." Motion at 3.

The Eighth Circuit Court of Appeals recently summarized the analysis that applies when a defendant contends he is entitled to a *Franks* hearing:

> To be entitled to a [*Franks*] hearing . . . a defendant must make a substantial preliminary showing that includes
>
>> allegations of deliberate falsehood or of reckless disregard for the truth[. T]hose allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any nongovernmental informant.
>
> *Franks*[,] 438 U.S. [at] 171. While clear proof of these elements is not required at the stage at which the defendant is demonstrating an entitlement to an evidentiary hearing, *United States v. Owens*, 882 F.2d 1493, 1498 (10th Cir. 1989), the defendant still must make a "substantial preliminary showing"

11

> comprised of specific allegations along with supporting affidavits or similarly reliable statements. *Cf. Franks*, 438 U.S. at 171 (describing the showing requirements for allegedly false statements in warrant affidavits). Because "[t]here is … a presumption of validity with respect to the affidavit supporting the search warrant[, t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id*. The substantiality requirement is not lightly met. *United States v. Wajda*, 810 F.2d 754, 759 (8th Cir. 1987).

*Williams*, 477 F.3d at 557-58.

Officer Spotted Tail's Report specifically states that the alleged sexual assault occurred at a party at the home of LaMont Papakee. Gov't Ex. 1 (docket no. 32-1), at 4; *see also id*. at 2. It also specifically describes Defendant's residence as 315 Red Earth Drive. *Id*. at 3. Deputy Ellenbecker swore to the truth to the facts in the Report, and Officer Spotted Tail confirmed the substance of the Report under oath. Magistrate Frese then issued the warrant to search the residence at 315 Red Earth Drive, Tama, Iowa.

The court finds that no facts were omitted and Magistrate Frese was not misled. Defendant has failed to make a substantial preliminary showing sufficient to justify a *Franks* hearing.

Accordingly, the court overrules Defendant's Objections, insofar as he alleges that he is entitled to a *Franks* hearing.

### C. Good Faith

Defendant contends that, if the warrant lacked probable cause or there was a *Franks* violation, "the warrant cannot survive the *Leon* Good Faith Exception." Objections at 2. Under *Leon*, "evidence is admissible when it is objectively reasonable for a police officer to have relied in good faith on the issuing judge's probable-cause determination." *United States v. Puckett*, 466 F.3d 626, 629-30 (8th Cir. 2006) (citing *Leon*, 468 U.S. at 922).

12

> There are four circumstances in which the good-faith exception does not apply: (1) when there is a *Franks* violation; (2) when an issuing judge has "wholly abandoned his judicial role"; (3) when it is entirely unreasonable to believe that an affidavit provides probable cause to issue a warrant; and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

*Id.* at 630 (quoting *Leon*, 468 U.S. at 923).

As indicated, the court finds that there was probable cause to support the warrant and there was no *Franks* violation. Therefore, the court need not reach the merits of Defendant's *Leon* good-faith argument. *See United States v. Davis*, 471 F.3d 938, 947 (8th Cir. 2006) (declining to address *Leon* good-faith argument where affidavit provided probable cause to support search warrant).

Accordingly, the court overrules Defendant's Objections, insofar as he alleges that the *Leon* good faith exception does not apply.

### D. New Argument

In a new argument not presented in the Motion, Defendant asks the court to suppress certain statements he allegedly made to law enforcement officers at the time of his arrest. Defendant explains that, after the Report and Recommendation was filed, counsel for the government gave Defendant a copy of a previously undisclosed FBI report. In the FBI report, Defendant is reported as making a number of statements to law enforcement officers. Defendant asks the court to suppress the statements pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).

Defendant's argument is procedurally defective, because it is not an objection to the Report and Recommendation. If Defendant believes that the statements should be suppressed, he should file a formal motion to suppress. The court grants Defendant two court days from the date of the instant Order to file such a motion.

13

## VI. CONCLUSION

**IT IS ORDERED:**

(1) The government's Request (docket no. 48) regarding the Report and Recommendation (docket no. 33) is **GRANTED**;

(2) Defendant's Objections (docket no. 52) to the Report and Recommendation (docket no. 33) are **OVERRULED**;

(3) The United States magistrate judge's Report and Recommendation (docket no. 33) is **SET ASIDE IN PART AND ADOPTED IN PART**;

(4) Defendant's Motion (docket no. 29) is **DENIED**; and

(5) The time between the filing of Defendant's Motion and the date of this Order is hereby excluded from calculation under the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(F) (excluding delay resulting from the filing of any pretrial motion through the conclusion of the hearing thereon); 18 U.S.C. § 3161(h)(1)(J) (excluding "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court").

**IT IS SO ORDERED.**

**DATED** this 21st day of March, 2007.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA